MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. RUSSELL, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

JOSEPH M. PATANE, ESQ. (72202)
LAW OFFICE OF JOSEPH M. PATANE
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: jpatane@tatp.com

Attorneys for Plaintiffs
[Additional Attorneys Appear On Signature Page]

FILED

2010 APR 29 A II: 23

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GREGORY SINIGIANI, AIMEE BROCK, WILLIAM CRAIG STEPHENSON, RAYMOND F. BARBUSH, SIDNEY PLITNIK, CYNTHIA SAIA, GEOFFREY KORWAN, PATRICK PIPER, FRANK WARNER, AND CHRISTOPHER SMITH, on behalf of themselves and all others similarly situated, | Case No. CV 10 1847 |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| vs. | |
| SONY CORPORATION, SONY OPTIARC AMERICA INC., SONY OPTIARC INC., HITACHI, LTD., TEAC CORPORATION, TEAC AMERICA, INC., LG ELECTRONICS, INC., HITACHI-LG DATA STORAGE INC., TOSHIBA SAMSUNG STORAGE TECHNOLOGY CORP., SAMSUNG ELECTRONICS CO. LTD., TOSHIBA CORPORATION, KONINKLIJKE PHILIPS ELECTRONICS N.V., LITE-ON IT | |

1

**CLASS ACTION COMPLAINT**

CORPORATION, PHILIPS AND LITE-ON
DIGITAL SOLUTIONS CORPORATION,
PHILIPS AND LITE-ON DIGITAL
SOULTIONS USA, INC.,

         Defendants.

 )
 )
 )
 )
 )
 )

## CLASS ACTION COMPLAINT

Plaintiffs Gregory Sinigiani, Aimee Brock, William Craig Stephenson, Raymond F. Barbush, Sidney Plitnik, Cynthia Saia, Geoffrey Korwan, Patrick Piper, Frank Warner and Christopher Smith ("Plaintiffs"), indirect purchasers of Optical Disk Drives (as further defined below), bring this action on behalf of themselves and all others similarly situated in the United States for damages and injunctive relief under state and federal antitrust, unfair competition, and consumer protection laws against the Defendants named herein, demanding trial by jury, and complaining and alleging as follows:

## I.    NATURE OF THE CASE

1.    This case arises out of a long-running conspiracy extending from at least October 1, 2005 through the present ("the Class Period"), among Defendants and their co-conspirators, with the purpose and effect of fixing, raising, and maintaining prices for Optical Disk Drives sold indirectly to Plaintiffs and other indirect purchasers throughout the United States.

2.    The Optical Disk Drives and Optical Disk Drive Products that are the subject of this lawsuit include the following formats: CD-ROMs ("CD"), CD recordable/rewritable ("CD-R/RW"), DVD-ROM ("DVD"), DVD-recordable/rewritable ("DVD-R/RW")), Blu-Ray ("BD"), Blu-Ray recordable/rewritable ("BD-R"/"BD-RE") and HD-DVD. During the Class Period, Optical Disk Drives served as one of the primary means for recording and reading music, movies, and other digital data. During this time, Defendants' sales of Optical Disk Drives and Optical Disk Drive Products increased substantially and generated billions of dollars in annual revenues.

3.    To maintain price stability and increase profitability in the Optical Disk Drive market, Defendants conspired, combined, and contracted to fix, raise, maintain, and stabilize the price at which Optical Disk Drives and Optical Disk Drive Products were sold in the United States.

Defendants fraudulently concealed their anticompetitive conduct from Plaintiffs and the Classes in furtherance of the conspiracy.

4.      Defendants' anticompetitive conduct in the Optical Disk Drive market is the subject of an ongoing grand jury investigation by the United States Department of Justice ("DOJ"). Regulators in other countries are investigating Defendants' practices as well.

5.      As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the Class paid artificially inflated prices for Optical Disk Drives and Optical Disk Drive Products during the Class Period in excess of the prices they would have paid in a competitive market.

6.      Plaintiffs bring this action seeking federal injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26 for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and to recover damages under state antitrust, consumer protection, unfair trade, and/or deceptive trade practices laws, common law principles of restitution, disgorgement, unjust enrichment, as well as to recover the costs of suit, including reasonable attorneys fees, for the injuries that Plaintiffs and all others similarly situated sustained as a result of the Defendants' conspiracy to fix, raise, maintain and stabilize the price of Optical Disk Drives.

## II.      JURISDICTION AND VENUE

7.      This action is brought under Section 16 of the Clayton Act (15 U.S.C. §26) to secure equitable relief against Defendants due to their violations of Section 1 of the Sherman Antitrust Act (15 U.S.C. §1), as well as under the antitrust and other laws of the State of California and other states listed herein to obtain restitution, recover damages, and to secure other relief against Defendants for violations of those laws.

8.      This Court has subject matter jurisdiction of the federal antitrust claims asserted in this action under Section 16 of the Clayton Antitrust Act (15 U.S.C. §26), Section 1 of the Sherman Act (15 U.S.C. §1), and 28 U.S.C. §§ 1331 and 1337. This Court has subject matter jurisdiction of the state-law claims asserted in this action under 28 U.S.C. §§ 1332(d) and 1367, in that the matter in controversy exceeds the sum of $5 million exclusive of interest and costs, members of the proposed classes are citizens of states different from Defendants, and certain Defendants are citizens or subjects of foreign states.

**CLASS ACTION COMPLAINT**

9.      Venue is proper in this District pursuant to 15 U.S.C. §22 and 28 U.S.C. §1391, because one or more Defendants reside, is licensed to do business, or is found or transacts business in this District, and a substantial part of the events or omissions giving rise to the Plaintiffs' claims arose in this District.

10.     Defendants conduct business throughout the United States, including in this jurisdiction, and they have purposefully availed themselves of the laws of the United States, including specifically the laws of the State of California and the individual states listed herein. Defendants' products are sold in the flow of interstate commerce, and Defendants' activities had a direct, substantial and reasonably foreseeable effect on such commerce.

11.     Defendants' conspiracy to fix the price of Optical Disk Drives substantially affected commerce throughout the United States and in each of the states identified herein because Defendants, directly or through their agents, engaged in activities affecting each such state. Defendants have purposefully availed themselves of the laws of each of the states identified herein in connection with their activities relating to the production, marketing, and sale of Optical Disk Drives. Defendants produced, promoted, sold, marketed, and/or distributed Optical Disk Drives, thereby purposefully profiting from access to indirect-purchaser consumers in each such state. Defendants also contracted to supply or obtain goods or revenue related to the business for Optical Disk Drives. As a result of the activities described herein, Defendants:

      a.      Caused damage to the residents of the states identified herein;

      b.      Caused damage in each of the states identified herein by acts or omissions committed outside each such states by regularly doing or soliciting business in each such state;

      c.      Engaged in persistent courses of conduct within each such state and/or derived substantial revenue from the marketing of Optical Disk Drives or the products in which they are used in each such state (and services relating to such marketing); and

      d.      Committed acts or omissions that they knew or should have known would cause damage (and did, in fact, cause such damage) in each such state while

4

**CLASS ACTION COMPLAINT**

1      regularly doing or soliciting business in each such state, engaging in other

2      persistent courses of conduct in each such state, and/or deriving substantial

3      revenue from the marketing of Optical Disk Drives or the products in which

4      they are used in each such state.

5      12.    The conspiracy described herein affected adversely every person nationwide and in

6  each of the states identified in this Complaint who indirectly purchased Defendants' Optical Disk

7  Drives. Defendants' conspiracy has resulted in an adverse monetary effect on indirect purchasers

8  in each state identified herein.

9      13.    Prices of Optical Disk Drives in each state can be manipulated by conspirators

10 within that state, outside of it, or both. Without enforcing the antitrust and/or consumer protection

11 laws of each of the states identified herein, companies that break the law will go unpunished.

12 Defendants knew that commerce in each of the states identified herein would be adversely affected

13 by implementing their conspiracy.

14     **III.**    **THE PARTIES**

15     **A.**    **The Plaintiffs**

16     14.    During the Class Period, the following named Plaintiffs indirectly purchased

17 Optical Disk Drives from one or more Defendants named herein for end use and not for resale.

18     15.    Plaintiff Gregory Sinigiani, a resident of California, indirectly purchased an Optical

19 Disk Drive when he purchased a personal computer during the Class Period, and was injured as a

20 result of Defendants' illegal conduct.

21     16.    Plaintiff Aimee Brock, a resident of Nevada, indirectly purchased Optical Disk

22 Drives when she purchased a personal computer during the Class Period, and was injured as a

23 result of Defendants' illegal conduct.

24     17.    Plaintiff William Craig Stephenson, a resident of New Mexico, indirectly purchased

25 an Optical Disk Drive when he purchased a personal computer during the Class Period, and was

26 injured as a result of Defendants' illegal conduct.

27     18.    Plaintiff Raymond F. Barbush, a resident of Wisconsin, indirectly purchased Optical

28 Disk Drives when he purchased a CD player during the Class Period, and was injured as a result of

**CLASS ACTION COMPLAINT**

1    Defendants' illegal conduct.

2        19.    Plaintiff Sidney Plitnik, a resident of New York, indirectly purchased Optical Disk

3    Drives when he purchased a personal computer during the Class Period, and was injured as a result

4    of Defendants' illegal conduct.

5        20.    Plaintiff Cynthia Saia, a resident of Mississippi, indirectly purchased Optical Disk

6    Drives when she purchased a personal computer during the Class Period, and was injured as a

7    result of Defendants' illegal conduct.

8        21.    Plaintiff Geoffrey Korwan, a resident of West Virginia, indirectly purchased Optical

9    Disk Drives when he purchased a personal computer during the Class Period, and was injured as a

10   result of Defendants' illegal conduct.

11       22.    Plaintiff Patrick Piper, a resident of Florida, indirectly purchased Optical Disk

12   Drives when he purchased a personal computer during the Class Period, and was injured as a result

13   of Defendants' illegal conduct.

14       23.    Plaintiff Daniel Riebow, a resident of Hawaii, indirectly purchased Optical Disk

15   Drives when he purchased a personal computer during the Class Period, and was injured as a result

16   of Defendants' illegal conduct.

17       24.    Plaintiff Frank Warner, a resident of Tennessee, indirectly purchased Optical Disk

18   Drives when he purchased a personal computer during the Class Period, and was injured as a result

19   of Defendants' illegal conduct.

20       25.    Plaintiff Christopher Smith, a resident of Washington, indirectly purchased Optical

21   Disk Drives when he purchased a personal computer during the Class Period, and was injured as a

22   result of Defendants' illegal conduct.

23       26.    Plaintiffs and the members of the Indirect-Purchaser Class were injured in their

24   businesses or property as a result of Defendants' illegal price-fixing agreement because they paid

25   more for Optical Disk Drive Products than they would have absent such illegal conduct.

26   **B.**    **The Defendants**

27       27.    Defendant Sony Corporation is a business entity under the laws of Japan, with a

28   principal place of business at 1-7-1, Konan, Minato-Ku, TKY 108-0075, Japan.  During the Class

6

**CLASS ACTION COMPLAINT**

1 | Period, Defendant Sony Corporation manufactured, sold, and/or distributed Optical Disk Drives

2 | throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

3 |      28.     Defendant Sony OptiArc Inc. is the parent corporation of Sony OptiArc America, Inc.

4 | and is organized under the laws of Japan, with its principal place of business at Gate City Osaki West

5 | Tower, 5F, 1-11-1, Osaki, Shinagawa-Ku, TKY 141-0032, Japan.  During the Class Period,

6 | Defendant Sony OptiArc Inc. manufactured, sold, and/or distributed Optical Disk Drives

7 | throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

8 |      29.     Defendant Sony OptiArc America Inc. is a corporation organized under the laws of

9 | Delaware, with its principal place of business at 1730 N. First Street, San Jose, California, 95112.

10 | Sony OptiArc America Inc. is formerly known as Sony NEC OptiArc, Inc. and is a wholly owned

11 | subsidiary of Sony OptiArc, Inc.  During the Class Period, Defendant Sony OptiArc America Inc.

12 | manufactured, sold, and/or distributed Optical Disk Drives throughout the United States, directly or

13 | through its predecessors, affiliates and/or subsidiaries.

14 |      30.     Defendants Sony Corporation, Sony OptiArc America Inc., and Sony OptiArc, Inc.

15 | are referred to collectively herein as "Sony".

16 |      31.     Defendant TEAC Corporation is a business entity organized under the laws of Japan,

17 | with its principal place of business at 1-47 Ochiai, Tama-shi, Tokyo, Japan.  TEAC Corporation

18 | controls TEAC America Inc.  During the Class Period, Defendant TEAC Corporation manufactured,

19 | sold, and/or distributed Optical Disk Drives throughout the United States, directly or through its

20 | predecessors, affiliates and/or subsidiaries.

21 |      32.     Defendant TEAC America, Inc. is a business entity organized under the laws of

22 | California, with its principal place of business at 7733 Telegraph Rd., Montebello, California.  TEAC

23 | America Inc. is a wholly owned subsidiary of Defendant TEAC Corporation.  During the Class

24 | Period, Defendant TEAC America Inc. manufactured, sold, and/or distributed Optical Disk Drives

25 | throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

26 |      33.     Defendant Hitachi Ltd. is a business entity organized under the laws of Japan, with its

27 | principal place of business at 4-6 Kanda-Surugadai Chiyoda-ku, Tokyo, Japan.  Hitachi Ltd. is one of

28 | the parent corporations of a jointly-owned subsidiary, Hitachi-LG Storage Inc.  During the Class

**CLASS ACTION COMPLAINT**

1    Period, Defendant Hitachi Ltd. manufactured, sold, and/or distributed Optical Disk Drives

2    throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

3        34.    Defendant LG Electronics Inc. is a business entity organized under the laws of Korea,

4    with its principal place of business at 26/F Twin Tower South 20, Yoido-Dong, Youngdungpo-Gu,

5    Seoul, SEO 150875, Republic of Korea.  LG Electronics Inc. is the one of the parent corporations of a

6    jointly-owned subsidiary, Hitachi-LG Storage Inc.  During the Class Period, Defendant LG

7    Electronics Inc. manufactured, sold, and/or distributed Optical Disk Drives throughout the United

8    States, directly or through its predecessors, affiliates and/or subsidiaries.

9        35.    Defendant Hitachi-LG Data Storage Inc. is a business entity organized under the laws

10    of Japan, with its principal place of business at 4F MSC Center Building, 22-23 Kaigan 3-chome,

11    Tokyo Japan.  Hitachi-LG Storage Inc. is joint venture formed in 2001, and is 51% owned by Hitachi

12    Ltd. and 49% owned by LG Electronics Inc.  During the Class Period, Defendant Hitachi-LG Data

13    Storage Inc. manufactured, sold, and/or distributed Optical drive products throughout the United

14    States, directly or through its predecessors, affiliates and/or subsidiaries.

15        36.    Defendant Toshiba Corporation is a business entity organized under the laws of Japan,

16    with its principal place of business at 1-1, Shibaura 1-chome, Minat-ku, Tokyo, 105-8001, Japan.

17    Toshiba Corp. is one of the parent corporations of a jointly-owned subsidiary, Toshiba Samsung

18    Storage Technology Corp.  During the Class Period, Defendant Toshiba Corporation manufactured,

19    sold, and/or distributed Optical Disk Drives throughout the United States, directly or through its

20    predecessors, affiliates and/or subsidiaries.

21        37.    Defendant Samsung Electronics Co., Ltd. is a business entity organized under the

22    laws of South Korea, with its principal place of business at Samsung Main Building 250-2 ga,

23    Taepyung-ro Chung-gu, Seoul, Korea.  Samsung Electronics Co., Ltd. is one of the parent

24    corporations of a jointly-owned subsidiary, Toshiba Samsung Storage Technology Corp.  During the

25    Class Period, Defendant Samsung Electronics Co, Ltd. manufactured, sold, and/or distributed

26    Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates

27    and/or subsidiaries.

28        38.    Defendant Toshiba Samsung Storage Technology Corp. is a business entity organized

**CLASS ACTION COMPLAINT**

1  under the laws of Japan, with its principal place of business at Solid Square 580, Horikawacho,

2  Saiwai-ku, Kawasaki, KNG 212-0013 Japan. Toshiba Samsung Storage Technology Corp. is a joint

3  venture established in 2004, and is 51% owned by Toshiba Corporation and 49% owned by Samsung

4  Electronics Co. During the Class Period, Defendant Toshiba Samsung Storage Technology Corp.

5  manufactured, sold, and/or distributed Optical Disk Drives throughout the United States, directly or

6  through its predecessors, affiliates and/or subsidiaries.

7      39.    Defendant Koninklijke Philips Electronics N.V. ("Philips") is a business entity

8  organized under the laws of The Netherlands, with its principal place of business at

9  Groenewoudseweg 1, Einhoven 5621 BA, The Netherlands. Philips controls itself and jointly owns

10  other entities such as Philips & Lite-On Digital Solutions Corporation. During the Class Period,

11  Defendant Philips manufactured, sold, and/or distributed Optical Disk Drives throughout the

12  United States, directly or through its predecessors, affiliates and/or subsidiaries.

13      40.    Defendant Lite-On IT Corporation ("Lite-On") is a business entity organized under

14  the laws of Taiwan, with its principal place of business at 12-15F, Jui Kuand Road, Taipei City, TAP,

15  11492, Taiwan. Lite-On controls itself and jointly owns other entities such as Philips & Lite-On

16  Digital Solutions Corporation. During the Class Period, Defendant Lite-On manufactured, sold,

17  and/or distributed Optical Disk Drives throughout the United States, directly or through its

18  predecessors, affiliates and/or subsidiaries.

19      41.    Defendant Philips & Lite-On Digital Solutions Corporation is a business entity

20  organized under the laws of Taiwan, with its principal place of business at 16F, 392, Jui Kuang Road,

21  Taipei City, TAP, 11492, Taiwan. Philips & Lite-On Digital Solutions Corporation is a joint venture

22  between Philips and Lite-On established in 2007. During the Class Period, Defendant Philips &

23  Lite-On Digital Solutions Corporation manufactured, sold, and/or distributed Optical Disk Drives

24  throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

25      42.    Defendant Philips & Lite-On Digital Solutions USA, Inc. is a business entity

26  organized under the laws of Delaware, with its principal place of business at 42000 Christy Street,

27  Fremont, California, 94538. Philips & Lite-On Digital Solutions USA Inc. is a joint venture between

28  Philips and Lite-On established in 2007. During the Class Period, Defendant Philips & Lite-On

**CLASS ACTION COMPLAINT**

1   Digital Solutions USA Inc. manufactured, sold, and/or distributed Optical Disk Drives throughout

2   the United States, directly or through its predecessors, affiliates and/or subsidiaries.

3        **C.**     <u>**Co-Conspirators**</u>

4        43.     Various persons and entities, whose identities are at this time unknown to Plaintiffs,

5   participated as co-conspirators in the violations alleged herein and performed acts and made

6   statements in furtherance thereof.  When Plaintiffs learn the identities of such co-conspirators,

7   Plaintiffs will seek leave to amend this Complaint to add such co-conspirators as Defendants.

8        44.     The acts charged in this Complaint have been done by Defendants and their co-

9   conspirators, or were authorized, ordered, or done by their respective officers, agents, employees,

10   or representatives while actively engaged in the management of each defendant's business or

11   affairs.

12        45.     Each Defendant named herein acted as the agent or joint venturer of or for other

13   Defendants with respect to the acts, violations and common course of conduct alleged herein.

14   Each Defendant that is a subsidiary of a foreign parent acts as the United States agent for Optical

15   Disk Drives made by its parent company.

16        **IV.**     **FACTUAL ALLEGATIONS**

17        **A.**     <u>**Nature of Commerce.**</u>

18        46.     During the Class Period, Defendants' annual sales of Optical Disk Drives have been

19   in the billions of dollars.

20        47.     In 2008, Samsung estimated that 313 million Optical Disk Drives were sold for

21   personal computers annually, and that more than 200 million Optical Disk Drives were sold

22   annually for all other applications, including CD and DVD players and recorders, camcorders,

23   game consoles, and automotive audio and video units.

24        **B.**     <u>**Optical Disk Drive Technology and Industry Background.**</u>

25        48.     Optical disks contain microscopic pits for storing data.  These pits are made from a

26   crystalline metal alloy and typically are pressed into the disc in a spiral arrangement, beginning at

27   the disk's center.  An Optical Disk Drive will spin an inserted disk, while a lens inside the device

28   guides a semiconductor laser beam to scan the disk's surface, and a photodiode detects the light

**CLASS ACTION COMPLAINT**

1   reflected from the disk's bumps and pits. The photodiode reads the light's reflection as a binary

2   code, a series of ones and zeros that can be translated by a computer to usable data. As the laser

3   strikes the pits, the photodiode detects changes in the intensity of the beams and translates those

4   beams into electrical signals. Disks with a greater number of pits can store more data. Additional

5   layers also can be added to disks to increase storage capacity.

6       49.     The pits are approximately 0.8 micrometers on CDs, 0.4 micrometers on DVDs, and

7   0.15 micrometers on Blu-Ray disks. Optical Disk Drives must have lasers of different

8   wavelengths to read the various disk formats. For example, Blu-Ray disk players use a shorter

9   wavelength laser, blue-violet, to read disks.

10      50.     Optical Disk Drives also can be equipped with technology to write and/or re-write

11  information on certain types of disks. Optical Disc Drives that can write or re-write data are

12  commonly referred to as "burners" or "writers." Different types of Optical Disc Drives contain

13  various speeds for accessing and writing data.

14      51.     When a recordable disk such as a CD-R, DVD-R or Blu-Ray-R is inserted into an

15  appropriate Optical Disc Drive, the unit's laser is used to selectively heat parts of the organic

16  photosensitive dye layer. The reflective properties of the disk's surface change as the disk is

17  exposed to the laser beam, causing the photodiode to recognize these surface changes as bumps

18  and pits and to read the new information on the disk.

19      52.     Sony and Philips jointed invented audio CDs and the initial Optical Disk Drives that

20  read them. In 1972, Philips announced that it had invented a technique for storing audio

21  recordings on small diameter optical disks. Concurrently, Sony was developing techniques for

22  storing audio recordings on larger diameter optical disks while focusing on error correction

23  techniques. In 1978, Sony and Philips agreed on a single disk format and error correction method.

24   They introduced CDs and CD players to the public in 1982. Since the 1980s, several companies

25  adopted the standards established by Sony and Philips to create other Optical Disk Drive

26  technologies.

27      53.     After Sony and Philips established standards for creating CDs and Optical Disk

28  Drives to read them, CD-ROM drives began to penetrate the computer market. Optical Disk

11

**CLASS ACTION COMPLAINT**

1   Drives have been commonly used in computers since the 1990s, when CD-ROM drives became

2   affordable for the average consumer.  Manufacturers subsequently developed Optical Disk Drive

3   technologies including DVD and Blu-Ray that can read, write and store greater amounts of data

4   than CD-ROMs.

5          54.     Today, Optical Disk Drives are standard components of almost every computer used

6   in the United States.  Due to the increasing popularity of personal and laptop computers,

7   Defendants manufacture, distribute and sell hundreds of millions of Optical Disk Drives each year,

8   generating billions of dollars in annual revenues.  Worldwide Optical Disk Drive shipments

9   reached over 300 million in 2007, and generated over $45 billion in sales revenue between 2004

10  and 2008.

11         **C.    Opportunity for Collusion.**

12         55.     At all times prior to and during the Class Period, the Optical Disk Drive industry

13  exhibited certain characteristics that facilitate a conspiracy among industry participants, including

14  market concentration, ease of information sharing, interrelated business relationships, significant

15  barriers to entry, and standardization of Optical Disk Drive Products.

16                      **Market Concentration and Joint Ventures.**

17         56.     According to published reports, during the Class Period, the Optical Disk Drive

18  industry has been dominated by Defendants and their co-conspirators.  During the Class Period,

19  Defendant Philips & Lite-On Digital Solutions Corporation had a 30% market share.  The joint

20  venture between Defendants Hitachi and LG Electronics, Defendant Hitachi-LG Data Storage Inc.,

21  had a 27% market share.  The joint venture between Defendants Toshiba and Samsung, Defendant

22  Toshiba Samsung Storage Technology Corp., had a 20% market share.  And, Defendant Sony

23  Optiarc America, Inc. had a 17% market share.  Together these Defendants control over 90% of the

24  global market for Optical Disk Drives.

25         57.     In October 2000, Defendants Hitachi and LG Electronics joined together to form

26  Defendant Hitachi-LG Data Storage Inc., a joint venture company for the development, design, and

27  marketing of Optical Disk Drives.

28         58.     In April 2003, Defendants Samsung Electronics and Toshiba Corporation signed a

12

**CLASS ACTION COMPLAINT**

memorandum of understanding.  In January 2004, these Defendants concluded an agreement to integrate their Optical Disk Drive businesses into a single entity.  In April 2004, Defendant Toshiba Samsung Storage Technology Corp. was launched to develop, market, and design Optical Disk Drives.

59.     In April 2006, Defendant Sony Corporation and NEC Corporation joined forces to create Sony NEC Optiarc Inc.  At the formation of the joint venture, Sony had a 55% stake.  In September 2008, Sony purchased NEC Corp.'s interest in the joint venture, and renamed it Sony Optiarc Inc., a Defendant herein.

60.     In 2006, Defendant Lite-On IT Corporation acquired BenQ's Optical Disk Drive business to become the second-largest Optical Disk Drive manufacturer in the world.  The business was renamed Philips & Lite-On Digital Solutions Corporation, a Defendant herein.

61.     The joint ventures of each of these Defendants allowed them to share and have access to each of their parent companies' patents and technologies without the need to pay royalties.  The formation of these joint ventures was the product of the exchange of information, and facilitates an ongoing antitrust conspiracy between Defendants.

62.     The mutually beneficial nature of the business relationships between certain Defendants not only afforded them the opportunity to conspire, but also created a financial incentive for them to do so.  According to a spokesman for Defendant Sony Corporation, Defendant Sony NEC Optiarc, Inc. came into existence because, "There was a feeling that those two complementary strengths [Sony Corporation and NEC Corporation] would make more sense in a joint venture than competing against each other."

**Barriers to Entry**

63.     There are significant manufacturing and technological barriers to entry into the Optical Disk Drive industry.  Companies must spend hundreds of millions of dollars in research and development, licensing, and manufacturing of products to compete in the Optical Disk Drive industry.  Defendants' ownership and control over Optical Disk Drive technology and market share has enabled Defendants to dictate the terms and costs by which other companies can enter the market.  These barriers to entry have created significant difficulty for smaller manufacturers of

13

**CLASS ACTION COMPLAINT**

1    Optical Disk Drives to compete with Defendants and overcome the effects of economies of scale.

2    As a result, the financial structure of the Optical Disk Drive industry has allowed Defendants to

3    implement their conspiracy to restrict competition and fix, maintain, and stabilize prices for

4    Optical Disk Drives at supra-competitive levels without losing market share.

5         64.    Price-fixing and market allocation are easier to attain within a highly concentrated,

6    fungible market for which adequate substitutes do not exist.  All of these factors facilitate the

7    implementation and maintenance of an antitrust conspiracy such as that perpetrated by Defendants

8    and alleged herein.  The facts do not support a finding of conscious parallelism.  Instead, it is

9    evident from the facts that Defendants communicated and conspired to the detriment of Optical

10   Disk Drive consumers.

11                      **Trade Associations and Business Organizations.**

12        65.    During the Class Period, Defendants belonged to trade and business organizations

13   that focused on Optical Disk Drives and related industries.  These organizations include the DVD

14   Forum, the Optical Storage Technology Association ("OSTA"), and the International Symposium

15   of Optical Memory ("ISOM").

16        66.    The DVD Forum is a global group of hardware manufacturers, software firms, and

17   content providers.  It was established in 1997.  The DVD Forum is responsible for the licensing

18   and distribution of DVD products.  The DVD Forum states that its "purpose is to exchange and

19   disseminate ideas and information about the DVD Format and its technical capabilities,

20   improvements and innovations."  Defendants Hitachi, LG Electronics, Lite-On, Philips, Samsung,

21   Sony, and Toshiba are members of the DVD Forum.

22        67.    Defendants Hitachi, LG Electronics, Samsung, Sony, and Toshiba are also members

23   of the DVD Forum's Steering Committee.  The Steering Committee's last meeting took place on

24   September 10, 2009 at the Universal Hilton Hotel in Los Angeles, California.  During that meeting,

25   Defendants and their co-conspirators communicated with each other about the price-fixing

26   conspiracy and agreed to continue to fix, maintain, and stabilize prices for Optical Disk Drives.

27        68.    Defendants LG Electronics and Sony Corporation are members of OSTA.

28   According to OSTA's website, the organization was "incorporated as an international trade

14

**CLASS ACTION COMPLAINT**

1  association in 1992 to promote the use of writable optical technologies and products for storage of

2  computer data.  The organization's membership includes optical product manufacturers and

3  resellers from three continents, representing more than 85 percent of worldwide writable optical

4  product shipments.  They work to shape the future of the industry through regular meetings of

5  CD/DVD, file interchange, market development, magneto-optical and planning committees."

6       69.  The most recent meeting of the OSTA took place on March 16-18, 2009 at the

7  Pacific Business Centers in Cupertino, California.  Representatives, agents or employees of all

8  Defendants were present at that meeting.  During that meeting, Defendants were able to and did

9  meet and communicate with each other regarding the price-fixing conspiracy.  This meeting of the

10  OSTA enabled Defendants to exchange sensitive pricing information and ensured that Defendants

11  charged the same or similar prices for Optical Disk Drives.

12       70.  The Blu-Ray Disc Association is a worldwide group established in 2005 to promote

13  the Blu-Ray format and associated products, to establish standardized formats, and to cross-license

14  technology.  Defendants Hitachi, LG Electronics, Philips, Samsung, Sony, and Toshiba are

15  members of the Blu-Ray Disc Association.

16       71.  Defendants Sony, LG Electronics, Samsung. and Hitachi participated in the first

17  meeting of Blu-Ray patent owners in Los Angeles, California on July 6-7, 2006.  The stated

18  purpose of this meeting was to establish joint licensing agreements for Optical Disk Drive

19  technologies between the participants.

20       72.  The International Consumer Electronics Show is the world's largest consumer

21  electronics show.  The 2010 International Consumer Electronics Show was held on January 7-10,

22  2010 at the Venetian Hotel in Las Vegas, Nevada.  During that event, Defendants and their co-

23  conspirators communicated with each other about the price-fixing conspiracy.

24       73.  Defendants and their representatives, agents, and employees attended multiple

25  meetings and conferences organized by these and other industry groups both before and during the

26  Class Period, affording Defendants the opportunity to meet, discuss, and agree upon their pricing

27  of Optical Disk Drives.

28       74.  Defendants' use of industry associations to further their conspiracy with respect to

1   the Optical Disk Drive market is consistent with their prior conduct with respect to price-fixing

2   conspiracies for other markets.  In particular, Defendants and their affiliates and co-conspirators

3   participated in trade associations and attended industry meetings to further their conspiracies to fix,

4   maintain and stabilize prices for dynamic random access memory ("DRAM"), static random access

5   memory ("SRAM"), flash memory, thin film transistor liquid crystal display ("TFT-LCDs"), and

6   cathode-ray tubes ("CRTs").

7                                    **Standardization of Optical Disk Drives.**

8            75.     Since its inception in the 1970s, the Optical Disk Drive industry has been typified

9   by standardization of disks (e.g., CD-ROMs, DVD-ROMs) and Optical Disk Drive Products driven

10  by industry participants and a variety of industry-related organizations such as ECMA

11  International, the International Standardization Organization ("ISO"), and the International

12  Electrotechnical Commission ("IEC").  These organization and their members are dedicated to

13  "standardizing the use of information communication technology and consumer electronics."

14           76.     The Optical Disk Drive industry is also subject to patents and intellectual property

15  rights which require adoption of standardized products specifications.

16           77.     The standardization of Optical Disk Drives and Optical Disk Drive Products has

17  enabled Defendants to implement, enforce, and oversee their anticompetitive conspiracy to fix the

18  price of Optical Disk Drives and Optical Disk Drive Products.  As a result of this standardization,

19  Optical Disk Drives and Optical Disk Drive Products have become commodity products.

20  Consumers make purchasing decisions for these products based largely, if not exclusively, on

21  price.

22           **D.       Collusion on Prices for Optical Disk Drives.**

23           78.     Faced with shrinking profits, Defendants conspired to fix, raise, maintain, and

24  stabilize the price of Optical Disk Drives and Optical Disc Drive Products in the United States at

25  artificially inflated and anticompetitive levels to preserve and increase their revenues.

26           79.     Defendants have been the subject of government investigations for their cartel

27  activity in recent years.  For example, Defendant Samsung admitted guilt and paid a $300 million

28  fine following an investigation by the U.S. Department of Justice ("DOJ") into price-fixing of

**CLASS ACTION COMPLAINT**

1   DRAM computer chips.

2       80.   The DOJ is currently investigating Defendants Samsung, LG Electronics, Toshiba,

3   and Hitachi, among others, concerning collusion among manufacturers of TFT-LCDs.  The

4   ongoing TFT-LCD criminal investigation has resulted in hundreds of millions of dollars in

5   criminal penalties.  LG Electronics and Hitachi have both pled guilty to price fixing in the TFT-

6   LCD market and have been fined $400 million and $31 million, respectively.

7       81.   The European Union ("EU") has also investigated these same companies for

8   anticompetitive practices in the TFT-LCD market.  In addition, in November 2007, the EU fined

9   Defendant Sony and various related entities and the Hitachi Maxell Limited joint venture $110

10   million for fixing the prices of professional videotapes sold in Europe between 1999 and 2002.

11   The European Commission also fined Hitachi and Toshiba for their roles in a conspiracy to control

12   prices and allocate market shares in the market for gas-insulated switchgear between 1988 and

13   2004.

14       82.   On October 7, 2009, the Japan Fair Trade Commission issued a cease-and-desist

15   order and levied $37.4 million in fines against five companies, including Korean affiliates of

16   Defendants Samsung, LG Electronics, and Philips for their alleged participation in a price-fixing

17   cartel for CRTs.

18       83.   The pattern of illegal conduct by Defendants Hitachi, LG Electronics, Samsung,

19   Philips, and Sony in a wide variety of product markets is illustrative of Defendants' respective

20   corporate cultures. Those cultures encourage collusion with competitors to create additional profits

21   for their companies at the expense of consumers.

22       84.   The DOJ has commenced a grand jury investigation into anticompetitive conduct in

23   the Optical Disk Drive industry, involving several Defendants named herein.  The grand jury

24   investigation implies that DOJ attorneys have concluded that sufficient evidence exists to believe a

25   criminal violation of the antitrust laws has occurred.  On October 26, 2009, Defendants Sony

26   Optiarc America, Inc., TSST and Hitachi-LG Data Storage, Inc. confirmed that they received

27   subpoenas from the DOJ in connection with a criminal antitrust investigation into price-fixing, bid-

28   rigging, and allocation of markets for Optical Disk Drives.  According to various news reports, the

1    EU and Singaporean antitrust authorities are undertaking similar investigations.

2       85.    On October 27, 2009, a spokesperson for the DOJ confirmed that, "[t]he Antitrust

3    Division is investigating the possibility of anticompetitive practices in the Optical Disc Drive

4    industry."

5       86.    In a Form 6-K filed with the United States Securities and Exchange Commission on

6    November 16, 2009, Defendant Hitachi disclosed the following:

7               In June 2009, a subsidiary in Japan received a grand jury
                subpoena in connection with an investigation conducted by the
8               Antitrust Division of the U.S. Department of Justice and received
                requests for information from the European Commission, both in
9               respect of alleged antitrust violations relating to optical disk drives.
                Also in June 2009, the Competition Commission of Singapore began
10              an investigation of a subsidiary in Korea, also in respect of alleged
                antitrust violations relating to optical disk drives.  Relevant
11              authorities in the markets in which Hitachi operates continue to
                investigate Hitachi and may initiate similar investigations in the
12              future.  These investigations may result in significant penalties in
                multiple jurisdictions, and private parties may bring civil actions
13              against Hitachi seeking compensation for damages resulting from the
                relevant violations.  Such substantial legal liability or regulatory
14              action could have a material adverse effect on Hitachi's business,
                results of operations, financial condition, cash flows, reputation and
15              credibility.

16      87.    Defendant Philips' annual report for 2009 revealed that it and PLDS also are the

17   subject of the same criminal investigations.  The report stated:

18
                On October 27, 2009, the Antitrust Division of the United
19              States Department of Justice confirmed that it had initiated an
                investigation into possible anticompetitive practices in the Optical
20              Disc Drive (ODD) industry.  Philips Lite-On Digital Solutions Corp.
                (PLDS), a joint venture owned by the Company and Lite-On IT
21              Corporation, as an ODD market participant, is included in this
                investigation.  PLDS is also subject to similar investigations outside
22              the US relating to the ODD market. PLDS and Philips intend to
                cooperate with the authorities in these investigations.  [. . . ] These
23              matters are in their initial stages and due to the considerable
                uncertainty associated with these matters, on the basis of current
24              knowledge, the Company has concluded that potential losses cannot
                be reliably estimated with respect to these matters.  An adverse final
25              resolution of these investigations and litigation could have a
                materially adverse effect on the Company's consolidated financial
26              position, results of operations and cash flows.

27      88.    On October 28, 2009, it was announced that Defendants Sony and Philips were

28   fined by the Taiwan Fair Trade Commission for their anticompetitive business practices in

---

18

**CLASS ACTION COMPLAINT**

1    connection with their abuse of monopoly power in the licensing of CD-R technology.

2       **E.**    **Effects of Defendants' Antitrust Violations.**

3       89.    The ongoing contract, combination, or conspiracy described above has had and

4    continues to have at least the following effects:

5           a.    Price competition in the sale of Optical Disk Drives by Defendants and their

6                 co-conspirators has been restrained, suppressed, and eliminated throughout

7                 the United States;

8           b.    Prices for Optical Disk Drives sold by Defendants have been raised, fixed,

9                 maintained, and stabilized at artificially high and noncompetitive levels

10                throughout the United States; and

11          c.    Indirect purchasers of Optical Disk Drives from Defendants have been

12                deprived of the benefit of free and open competition in the purchase of

13                Optical Disk Drives and Optical Disk Drive Products.

14      90.    As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs

15   and other members of the proposed classes have been injured in their businesses and property in

16   that they paid more for Optical Disk Drives and Optical Disk Drive Products than they otherwise

17   would have paid in the absence of the unlawful conduct of Defendants.

18       **V.**    **THE PASS-THROUGH OF THE OVERCHARGES TO CONSUMERS**

19      91.    Defendants' conspiracy to raise, fix, or maintain the price of Optical Disk Drives at

20   artificial levels resulted in harm to Plaintiffs and the proposed classes because it resulted in them

21   paying higher prices for Optical Disk Drive Products than they would have in the absence of

22   Defendants' conspiracy.   The entire overcharge for Optical Disk Drives at issue was passed on to

23   Plaintiffs and members of proposed classes.

24      92.    Optical Disk Drives are commodity products, with functionally equivalent products

25   available from Defendants, which manufacture Optical Disk Drives pursuant to standard

26   specifications.

27      93.    The Optical Disk Drive market is dominated by a handful of leading manufacturers,

28   namely, Defendants in this case.

94.     An Optical Disk Drive is purchased by a consumer as a stand-alone device or as a substantial part of an Optical Disk Drive Product.  When an Optical Disk Drive is purchased by consumers as a stand-alone device, the device itself is directly traceable to the specific manufacturing Defendant.  When an Optical Disk Drive is purchased by a consumer as part of an Optical Disk Drive Product, it is a distinct, physically-discrete hardware element of the end-use product and is identifiable by a specific, discrete part or model number that permits tracing.  Optical Disk Drives are identifiable and traceable throughout the chain of the distribution to the end user.  They do not undergo any alterations as they move through the chain of distribution.

95.     The indirect-purchaser buys an Optical Disk Drive through one of two distribution chains, either from the direct purchaser OEM, or through a reseller such as a retailer.  Thus, an Optical Disk Drive follows a traceable physical chain from Defendants to the OEMs, to the purchasers of Optical Disk Drive Products.  Tracing can show that changes in the prices paid by direct purchasers of Optical Disk Drives affect prices paid by indirect-purchasers of the Optical Disk Drives themselves, or Optical Disk Drive Products.

96.     The OEM and the retail markets of Optical Disk Drives and Optical Disk Drive Products are subject to vigorous price competition.  The direct purchaser OEMs and retailers have very thin net margins.  They are therefore at the mercy of their component costs, such that increases in the price of Optical Disk Drives and Optical Disk Drive Products lead to quick, corresponding price increases at the OEM and retail levels for stand-alone Optical Disk Drives and Optical Disk Drive Products.

97.     As a result, the inflated prices of Optical Disk Drives resulting from Defendants' price-fixing conspiracy have been passed on to Plaintiffs and the other members of the proposed classes by direct-purchaser manufacturers, distributors, and retailers.

98.     Optical Disk Drives makes up a substantial component of the cost of Optical Disk Drive Products.  The retail price of an Optical Disk Drive Product is determined in substantial part by the cost of the Optical Disk Drive it contains.

99.     In retailing, it is common to use a "markup rule."  The retail price is set as the wholesale cost plus a percentage markup designed to recover non-product costs and to provide a

20

**CLASS ACTION COMPLAINT**

1  profit. This system guarantees that increases in costs to the retailer will be passed on to end

2  buyers.

3        100.    Unlawful overcharges for a fixed-price component result in higher prices for

4  products containing that price-fixed component.

5        101.    The economic and legal literature has recognized that unlawful overcharges in a

6  component normally result in higher prices for products containing that price-fixed component. As

7  Professor Herbert Hovenkamp, a noted antitrust scholar, has stated in his treatise, FEDERAL

8  ANTITRUST POLICY, THE LAW OF COMPETITITON AND ITS PRACTICE (1994) at 624:

9            A monopoly overcharge at the top of a distribution chain generally results in higher
   prices at every level below. For example if production of aluminum is monopolized
10           or cartelized, fabricators of aluminum cookware will pay higher prices for
   aluminum. In most cases they will absorb part of these increased costs themselves
11           and pass part along to cookware wholesalers. The wholesalers will charge higher
   prices to the retail stores, and the stores will do it once again to retail consumers.
12           Every person at every stage in the chain likely will be poorer as a result of the
   monopoly price at the top.
13

14           Theoretically, one can calculate the percentage of any overcharge that a firm at one
   distributional level will pass on to those at the next level.

15       102.    Similarly, two other antitrust scholars – Professors Robert G. Harris (Professor

16 Emeritus and former Chair of the Business and Public Policy Group at the Haas School of

17 Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor

18 of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust)

19 – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is

20 not the exception: it is the rule."

21       103.    As Professor Jeffrey K. McKie-Mason (Arthur W. Burks Professor for Information

22 and Computer Science and Professor of Economics and Public Policy at the University of

23 Michigan), an expert who presented evidence in a number of the indirect purchaser cases involving

24 Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class

25 certification):

26           As is well known in economic theory and practice, at least some of the overcharge
   will be passed on by distributors to end consumers. When the distribution markets
27           are highly competitive, as they are here, all or nearly the entire overcharge will be
   passed on through to ultimate consumers... Both of Microsoft's experts also agree
28           upon the economic phenomenon of cost pass through, and how it works in
   competitive markets. This general phenomenon of cost pass through is well

**CLASS ACTION COMPLAINT**

1   established in antitrust laws and economics as well.

2   104.   Economic and legal literature recognizes that the more pricing decisions are based

3   on cost, the easer it is to determine the pass-through rate. The directness of affected costs refers to

4   whether an overcharge affects a direct (*i.e.* variable) cost or an indirect (*i.e.*, overhead) cost.

5   Overcharges will be passed-through sooner and at a higher rate if the overcharge affects direct

6   costs. Here Optical Disk Drives are a direct (and substantial) cost of Optical Disk Drive Products.

7   105.   Other factors that lead to the pass-through of overcharges include: (i) whether price

8   changes are frequent; (ii) the duration of the anti-competitive overcharge; (iii) whether pricing

9   decisions are based on cost; (iv) whether the overcharge affects variable, as opposed to overhead,

10  costs; (v) whether the resellers' production technology is uniform; (vi) whether the reseller supply

11  curve exhibits a high degree of elasticity; and (vii) whether the demand of the resellers is inelastic.

12  All of these factors were present in the Optical Disk Drive market during the Class Period. The

13  precise amount of such an impact on the prices of Optical Disk Drives and Optical Disk Drive

14  Products can be measured and quantified. Commonly used and well-accepted economic models

15  can be used to measure both the extent and the amount of the supracompetitive charge passed-

16  through the chain of distribution.

17  106.   Plaintiffs and other indirect purchasers have been forced to pay supracompetitive

18  prices for Optical Disk Drives and Optical Disk Drive Products. These inflated prices have been

19  passed on to them by direct purchaser manufacturers, distributors, and retailers. Those overcharges

20  have unjustly enriched Defendants.

## VI.   CLASS ACTION ALLEGATIONS

22  107.   Plaintiffs bring this action on their own behalf and as a class action pursuant to Rule

23  23 of the Federal Rules of Civil Procedure on behalf of all members of the following Class (the

24  "Nationwide Class"):

> All persons citizens and entities residing in the United States that,
> from October 1, 2005 through the present, purchased in the United
> States, Optical Disk Drives indirectly from the Defendants for their
> own use and not for resale. Specifically excluded from this Class are
> the Defendants; the officers, directors or employees of any
> Defendant; any entity in which any Defendant has a controlling
> interest; and any affiliate, legal representative, heir or assign of any
> Defendant. Also excluded are any federal, state or local
> governmental entities, any judicial officer presiding over this action

22

**CLASS ACTION COMPLAINT**

and the members of his/her immediate family and judicial staff, and
any juror assigned to this action

108.    Plaintiffs also bring this action on behalf of themselves and as a class action

pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and/or respective

state statute(s), on behalf of all members of the following State classes or subclasses (collectively

"Indirect Purchaser State Classes"): Arizona, Arkansas, California, District of Columbia, Florida,

Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi,

Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota,

Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

109.    This action has been brought and may properly be maintained as a class action

pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or the respective statutes of the

states listed above for the following reasons:

a.    The Classes are ascertainable and there is a well-defined community of

interest among members of the Classes;

b.    Based upon the nature of trade and commerce involved and the number of

indirect purchasers of Optical Disk Drives, Plaintiffs believe that the number of Class members is

very large, and therefore joinder of all Class members is not practicable;

c.    Plaintiffs' claims are typical of Class members' claims because Plaintiffs

indirectly purchased Optical Disk Drives manufactured by Defendants or their co-conspirators, and

therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the claims

of the members of the Classes and the relief sought is common to the Classes;

d.    The following common questions of law or fact, among others, exist as to

the members of the Classes:

i.    Whether Defendants formed and operated a combination or

conspiracy to fix, raise, maintain, or stabilize the prices of Optical Disk Drives;

ii.    Whether the combination or conspiracy caused Optical Disk Drive

prices to be higher than they would have been in the absence of Defendants' conduct;

iii.    The operative time period of Defendants' combination or conspiracy;

23

**CLASS ACTION COMPLAINT**

1            iv.    Whether Defendants' conduct caused injury to the business or

2    property of Plaintiffs and the members of the Classes;

3            v.    The appropriate measure of the amount of damages suffered by the

4    Classes;

5            vi.    Whether Defendants' conduct violates Section 1 of the Sherman Act

6    (15 U.S.C. § 1) as alleged in the First Claim for Relief;

7            vii.    Whether Defendants' conduct violates the Indirect Purchaser States'

8    antitrust laws as alleged in the Second Claim for Relief;

9            viii.    Whether Defendants' conduct violates the unfair competition and

10   consumer protection laws of the Consumer Protection States as alleged in the Third Claim for

11   Relief;

12           ix.    The appropriate nature of class-wide equitable relief.

13       e.    These and other questions of law and fact common to the members of the

14   Classes predominate over any questions affecting only individual members, including legal and

15   factual issues relating to liability and damages;

16       f.    After determination of the predominant common issues identified above, if

17   necessary or appropriate, the Classes can be divided into logical and manageable subclasses;

18       g.    Plaintiffs will fairly and adequately protect the interests of the Classes in

19   that Plaintiffs have no interests that are antagonistic to other members of the Classes and have

20   retained counsel competent and experienced in the prosecution of class actions and antitrust

21   litigation to represent them and the Classes;

22       h.    A class action is superior to other available methods for the fair and efficient

23   adjudication of this litigation since individual joinder of all damaged Class members is impractical.

24   The damages suffered by the individual Class members are relatively small, given the expense and

25   burden of individual prosecution of the claims asserted in this litigation. Thus, absent the

26   availability of class action procedures it would not be feasible for Class members to redress the

27   wrongs done to them. Even if the Class members could afford individual litigation, the court

28   system could not. Further, individual litigation presents the potential for inconsistent or

24

**CLASS ACTION COMPLAINT**

contradictory judgments and would greatly magnify the delay and expense to all parties and the court system. Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision in a single court;

    i.    Defendants have acted, and/or refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole; and

    j.    In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of its wrongful conduct.

## VII.    FRAUDULENT CONCEALMENT

110.    Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiffs. Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their prices, including repeatedly and falsely attributing price increases to increased demand, increased costs, product shortages, and lack of manufacturing capacity, which justifications were made to the general public in press releases, comments to the press, annual reports, and other public filings.

111.    Defendants and their co-conspirators concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection. Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until October 26, 2009.

112.    Defendants also took affirmative acts to conceal the conspiracy including issuing public statements falsely stating the Optical Disk Drives were competitively priced. For instance, on June 4, 2007, Defendant Sony issued a press release falsely stating that its Blu-Ray disk player "gives a broader consumer segment the opportunity to experience the exceptional quality of Blu-Ray format at a competitive price."

113.    As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VIII.   VIOLATIONS ALLEGED

### First Claim for Relief
### (Violation of Section 1 of the Sherman Act)

114.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

115.    Beginning at a time currently unknown to Plaintiffs, but at least as early as October 1, 2005, and continuing through the present, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade artificially to fix, raise, stabilize, and peg prices for Optical Disk Drives and Optical Disk Drive Products in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

116.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

a.    Fixing, raising, stabilizing, and pegging the price of Optical Disk Drives; and

b.    Allocating among themselves and collusively reducing the production of Optical Disk Drives.

117.    The combination and conspiracy alleged herein has had the following effects, among others:

a.    Price competition in the sale of Optical Disk Drives has been restrained, suppressed, and/or eliminated in the United States;

b.    Prices for Optical Disk Drives sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

26

CLASS ACTION COMPLAINT

c.    Those who purchased Optical Disk Drives directly or indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

118.    Plaintiffs and other Nationwide Class members have been injured and will continue to be injured in their businesses and property by paying more for Optical Disk Drives purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy, including paying more for Optical Disk Drive Products, as a result of higher prices paid for Optical Disk Drives by the direct purchasers of such Optical Disk Drives.

119.    Plaintiffs and the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

### Second Claim for Relief
### (Unjust Enrichment and Disgorgement of Profits)

120.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

121.    Defendants have been unjustly enriched through overpayments by Plaintiffs and class members and the resulting profits.

122.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiffs and class members.

123.    Plaintiffs and all members of the Nationwide Class seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and class members may seek restitution.

### Third Claim for Relief
### (Violation of State Antitrust Statutes)

124.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

125.    Defendants' intentional and purposeful anticompetitive acts that are described above, including but not limited to acts of collusion to set prices and the actual act of price fixing itself, were intended to and did in fact case Plaintiffs and the members of the Indirect Purchaser

27

**CLASS ACTION COMPLAINT**

State Classes to pay supracompetitive prices for Optical Disk Drives purchased in the Indirect Purchaser States.

126.    Defendants' contract, combination and conspiracy as described above is in violation of the following state antitrust statutes:

127.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Arizona Revised Stat. §§44-1401 et seq.

128.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of California Business & Professions Code §16720 et seq.

129.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§28-4503 et seq.

130.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Illinois Compiled Statutes § 10/1 et. seq.

131.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§553.1 et seq.

132.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§50-101 et seq.

133.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 et seq.

134.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§445.773 et seq.

135.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§325D.52 et seq.

136.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §75-21-1 et seq.

137.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Rev. Stat. §59-801 et seq.

138.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§598A et seq.

**CLASS ACTION COMPLAINT**

1    139.   By reason of the foregoing, Defendants have entered into agreements in restraint of

2    trade in violation of New York Gen. Bus. Law § 340 et seq.

3    140.   By reason of the foregoing, Defendants have entered into agreements in restraint of

4    trade in violation of New Mexico Stat. Ann. §§57-1-1 et seq.

5    141.   By reason of the foregoing, Defendants have entered into agreements in restraint of

6    trade in violation of North Carolina Gen. Stat. §§75-1 et seq.

7    142.   By reason of the foregoing, Defendants have entered into agreements in restraint of

8    trade in violation of North Dakota Cent. Code §§51-08.1-01 et seq.

9    143.   By reason of the foregoing, Defendants have entered into agreements in restraint of

10   trade in violation of South Dakota Codified Laws Ann. §§37-1 et seq.

11   144.   By reason of the foregoing, Defendants have entered into agreements in restraint of

12   trade in violation of Tennessee Code Ann. §§47-25-101 et seq.

13   145.   By reason of the foregoing, Defendants have entered into agreements in restraint of

14   trade in violation of Utah Code Ann. § 76-10-911 et seq.

15   146.   By reason of the foregoing, Defendants have entered into agreements in restraint of

16   trade in violation of Vermont Stat. Ann. 9 §§2453 et seq.

17   147.   By reason of the foregoing, Defendants have entered into agreements in restraint of

18   trade in violation of West Virginia Code §§47-18-1 et seq.

19   148.   By reason of the foregoing, Defendants have entered into agreements in restraint of

20   trade in violation of Wisconsin Stat. §§133.01 et seq.

21   149.   Class members in each of the states listed above paid supracompetitive, artificially

22   inflated prices for Optical Disk Drives.  As a direct and proximate result of Defendants' unlawful

23   conduct, Plaintiffs and members of the Indirect Purchaser State Classes have been injured in their

24   business and property in that they paid more for Optical Disk Drives than they otherwise would

25   have paid in the absence of Defendants' unlawful conduct.

26   150.   As a result of Defendants' and their co-conspirators' violation of the above Indirect

27   Purchaser States' antitrust laws, Plaintiffs seek damages, to be trebled where permitted by a

28   particular State's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent

1    permitted by the above Indirect Purchaser States' antitrust laws.

2                              **Third Claim for Relief**

3        **(Violation of State Consumer Protection and Unfair Competition Statutes)**

4        151.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

5    allegation set forth in the preceding paragraphs of this Complaint.

6        152.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

7    fraudulent acts or practices in violation of the state consumer protection and unfair competition

8    statutes listed below.

9        153.    Defendants have engaged in unfair competition or unfair or deceptive acts or

10   practices in violation of Arkansas Code §4-88-101 et seq.

11       154.    Defendants have engaged in unfair competition or unfair or deceptive acts or

12   practices in violation of California Business & Professions Code §17200 et seq.

13       155.    Defendants have engaged in unfair competition or unfair or deceptive acts or

14   practices in violation of District of Columbia Code §28-3901 et seq.

15       156.    Defendants have engaged in unfair competition or unfair or deceptive acts or

16   practices in violation of Florida Stat. §501.201 et seq.

17       157.    Defendants have engaged in unfair competition or unfair or deceptive acts or

18   practices in violation of Hawaii Rev. Stat. §480-2 et seq.

19       158.    Defendants have engaged in unfair competition or unfair or deceptive acts or

20   practices in violation of Massachusetts G.L. c. 93A, §2 et seq.

21       159.    Defendants have engaged in unfair competition or unfair or deceptive acts or

22   practices in violation of Nebraska Rev. Stat. §59-1601 et seq.

23       160.    Defendants have engaged in unfair competition or unfair or deceptive acts or

24   practices in violation of New Hampshire Revised Statutes §358-A:1 et seq.

25       161.    Defendants have engaged in unfair competition or unfair or deceptive acts or

26   practices in violation of New Mexico Stat. §57-12-1 et seq.

27       162.    Defendants have engaged in unfair competition or unfair or deceptive acts or

28   practices in violation of New York Gen Bus. Law §349 et seq. Specifically:

**CLASS ACTION COMPLAINT**

1          a.      Defendants engaged in commerce in New York;

2          b.      Defendants and their co-conspirators secretly agreed to raise prices by direct

3    agreement on bids to customers located in New York and through artificial supply restraints on the

4    entire Optical Disk Drive market;

5          c.      New York consumers were targets of the conspiracy;

6          d.      The secret agreements were not known to New York consumers;

7          e.      Defendants made public statements about the price of Optical Disk Drives

8    that Defendants knew would be seen by New York consumers; such statements either omitted

9    material information that rendered these statements that they made materially misleading or

10    affirmatively misrepresented the real cause of price increases for Optical Disk Drives; and,

11    Defendants alone possessed material information that was relevant to consumers, but failed to

12    provide the information;

13          f.      Because of Defendants' unlawful trade practices in the State of New York,

14    there was a broad impact on New York consumer class members who indirectly purchased Optical

15    Disk Drives; and consumer class members have been injured because they have paid more for

16    Optical Disk Drives than they would have paid in the absence of Defendants' unlawful trade acts

17    and practices;

18          g.      Because of Defendants' unlawful trade practices in the State of New York,

19    New York consumer class members who indirectly purchased Optical Disk Drives were misled to

20    believe that they were paying a fair price for Optical Disk Drives or the price increases for Optical

21    Disk Drives were for valid business reasons; and similarly situated consumers were potentially

22    affected by Defendants' conduct;

23          h.      Defendants knew that their unlawful trade practices with respect to pricing

24    of Disk Drives would have an impact on New York consumers and not just Defendants' direct

25    customers;

26          i.      Defendants knew that their unlawful trade practices with respect to pricing

27    of Optical Disk Drives would have a broad impact, causing consumer class members who

28    indirectly purchased Optical Disk Drives to be injured by paying more for Optical Disk Drives than

**CLASS ACTION COMPLAINT**

1    they would have paid in the absence of Defendants' unlawful trade acts and practices;

2          j.     Defendants' consumer-oriented violations adversely affected the public

3    interest in the State of New York.

4       163.    Defendants have engaged in unfair competition or unfair or deceptive acts or

5    practices in violation of North Carolina Gen. Stat. §75-1.1 et seq.

6       164.    Defendants have engaged in unfair competition or unfair or deceptive acts or

7    practices in the sale of Optical Disk Drives that were indirectly purchased primarily for personal,

8    family, or household purposes in violation of Rhode Island Gen. Laws §6-13.1-1 et seq.

9          a.     Defendants engaged in commerce in Rhode Island;

10         b.     Defendants and their co-conspirators unscrupulously and secretly agreed to

11    raise Optical Disk Drive prices by direct agreement on prices Defendants charged their customers

12    located in Rhode Island and through artificial supply restraints on the entire Optical Disk Drives

13    market;

14         c.     The secret agreements were not known to Rhode Island natural persons who

15    indirectly purchased Optical Disk Drives primarily for personal, family or household purposes;

16         d.     Defendants made public statements that Defendants knew would be seen by

17    Rhode Island natural persons who indirectly purchased Optical Disk Drives primarily for personal,

18    family or household purposes; such statements created a likelihood of confusion or

19    misunderstanding with respect to the real reasons that the prices of Optical Disk Drives were

20    rising; and, such statements either omitted material information that rendered the statements

21    materially misleading  and confusing, or affirmatively deceived such consumers about the real

22    cause of price increases for Optical Disk Drives;

23         e.     Because of Defendants' unlawful and unscrupulous trade practices in Rhode

24    Island, natural persons in Rhode Island who indirectly purchased Optical Disk Drives primarily for

25    personal, family or household purposes were misled or deceived to believe that they were paying a

26    fair price for Optical Disk Drives or the price increases for Optical Disk Drives were for valid

27    business reasons;

28

**CLASS ACTION COMPLAINT**

f.      Natural persons who indirectly purchased Optical Disk Drives primarily for personal, family or household purposes have been injured because they have paid more for Optical Disk Drives than they would have in the absence of Defendants' unlawful and unscrupulous trade acts and practices;

g.      Defendants knew that their unscrupulous and unlawful trade practices with respect to pricing Optical Disk Drives would have an impact on Rhode Island natural persons who indirectly purchased Optical Disk Drives primarily for personal, family or household purposes and not just Defendants' direct customers;

h.      Defendants knew that their violations with respect to pricing of Optical Disk Drives would have a broad impact, causing natural persons who indirectly purchased Optical Disk Drives primarily for personal, family or household purposes to be injured by paying more for Optical Disk Drives than they would have paid in the absence of Defendants' unlawful trade acts and practices;

i.      Defendants' violations adversely affected public policy in Rhode Island.

165.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vermont Stat. Ann. Title 9, §2451 et seq.

166.    Class members in each of the states listed above paid supracompetitive, artificially inflated prices for Optical Disk Drives. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class members have been injured in their business and property in that they paid more for Optical Disk Drives than they otherwise would have paid in the absence of Defendants' unlawful conduct.

167.    Plaintiffs and Class members are therefore entitled to all appropriate relief as provided for by the above states' laws, including but not limited to, actual damages, injunctive relief, attorneys' fees and equitable relief such as restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of their unlawful conduct.

**CLASS ACTION COMPLAINT**

# IX.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray as follows:

A.     That the Court determine that the claims alleged herein under the Sherman Act, state antitrust laws, state consumer protection and/or unfair competition laws may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, as informed by the respective state class action laws;

B.     That the Court adjudge and decree that the unlawful conduct, contract, combination and conspiracy alleged herein constitutes:

        a.   A violation of the Sherman Act, 15 U.S.C. §1, as alleged in the First Claim for Relief;

        b.   Acts of unjust enrichment as set forth in the Second Claim for Relief;

        c.   A violation of the state antitrust laws as alleged in the Third Claim for Relief; and

        d.   A violation of the state consumer protection and unfair competition laws as alleged in the Fourth Claim for Relief herein;

C.     That Plaintiffs and the Indirect Purchaser State Classes recover damages, as provided by the state antitrust, consumer protection, and unfair competition laws alleged herein, and that a joint and several judgment in favor of Plaintiffs and the Classes be entered against the Defendants in an amount to be trebled in accordance with such laws;

D.     That Defendants, their co-conspirators, successors, transferees, assigns, parents, subsidiaries, affiliates, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on behalf of Defendants, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of action, or adopting or following any practice, plan, program or design having a similar purpose or effect in restraining competition;

**CLASS ACTION COMPLAINT**

1      E.     That Plaintiffs and the Classes be awarded restitution, including disgorgement of

2 profits obtained by Defendants as a result of its acts of unfair competition and acts of unjust

3 enrichment;

4      F.     That the Court award Plaintiffs and the Classes they represent pre-judgment and

5 post-judgment interest as permitted by law;

6      G.     That Plaintiffs and the members of the Classes recover their costs of suit, including

7 reasonable attorneys' fees as provided by law; and

8      H.     That the Court award Plaintiffs and the Classes they represent such other and further

9 relief as may be necessary and appropriate.

## X.   JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury for all issues so triable.

Dated: April 28, 2010      By: _____

Mario N. Alioto (56433)
Lauren C. Russell (241151)
**TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP**
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
malioto@tatp.com ; laurenrussell@tatp.com

Joseph M. Patane (72202)
**LAW OFFICES OF JOSEPH M. PATANE**
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: jpatane@tatp.com

Lawrence G. Papale (67068)
**LAW OFFICES OF LAWRENCE G. PAPALE**
1308 Main Street #117
St. Helena, CA 94574
Telephone: (707) 963-1704
Facsimile: (707) 963-0706
E-mail: lgpapale@papalelaw.com

**CLASS ACTION COMPLAINT**

Sherman Kassof (66383)
**LAW OFFICES OF SHERMAN KASSOF**
954 Risa Road, Suite B
Lafayette, CA 94549
Telephone: (510) 652 2554
Facsimile: (510) 652 9308
E-mail: heevay@att.net

Robert G. Methvin, Jr.
Philip W. McCallum
James Terrell
**McCALLUM, METHVIN & TERRELL, P.C.**
2201 Arlington Avenue South
Birmingham, AL 35305
Telephone: (205) 939-0199
Facsimile: (205) 939-0399
Email: Rgm@mmlaw.net
        pwm@mmlaw.net
        rem@mmlaw.net

Shawn A. Taylor
**SHAWN TAYLOR PLLC**
120 Capitol Street
P.O. Box 2132
Charleston, WV 25328
Telephone: (304) 345-5959
Facsimile: (304) 345-0270
Email: shawn@taylorlawfirm.net

Jeff Crabtree
**LAW OFFICES OF JEFF CRABTREE**
820 Mililani Street, Suite 701
Honolulu, HI 96813
Telephone: (808) 536-6260
Toll-free fax: 1-866-339-3380
Email: lawyer@consumerlaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

**CLASS ACTION COMPLAINT**